**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ALEJANDRO RODRIGUEZ,**  *Plaintiff*,  v.  **CAROLYN W. COLVIN,** **Acting Commissioner of Social Security,**  *Defendant*. | **Civil Action No. 14-6461**  **OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

Before this Court is Plaintiff Alejandro Rodriguez's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), of Administrative Law Judge Richard West's (the "ALJ") decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner of Social Security's ("Commissioner") decision is **AFFIRMED**.

**I.   LEGAL STANDARD**

   **A.  Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quotation omitted). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be

1

less than a preponderance." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 545 (3d Cir. 2003).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review. The reviewing court should not "weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the Commissioner's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972).

### B. Five-Step Sequential Analysis of Adult Disability

In order to determine whether an adult claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is

"severe." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must ask whether the claimant has "residual functional capacity" such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503. The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

## II. BACKGROUND

### A. Procedural History

This case arises out of Plaintiff's August 23, 2011 application for disability insurance benefits. Tr. 140. Although Plaintiff was approved for SSI benefits based on a hip injury he sustained in 2011, Tr. 65, he currently seeks benefits for a disability allegedly beginning on January 15, 2008. Tr. 25, 140. Plaintiff's date last insured ("DLI") was December 31, 2009. Tr. 25, 140.

The Commissioner denied Plaintiff's application initially on November 9, 2011, and upon reconsideration on February 10, 2012. Tr. 57, 81. Thereafter, a hearing was held before ALJ Richard West on March 5, 2013, at which Plaintiff appeared and testified. Tr. 32-53. On March 28, 2013, the ALJ issued an opinion, finding that Plaintiff was not disabled under the Act prior to December 31, 2009, and thus, was not entitled to DIB. Tr. 25-31. Plaintiff's subsequent request for review to the Appeals Council was denied on May 20, 2014. Tr. 13-16. On December 29, 2015, Plaintiff filed the instant action. Dkt. No. 1.

### B. Factual Background

#### 1. Vocational Background and Daily Activities Relevant to Plaintiff's Work Capacity

Plaintiff was a fifty-three year old man on his DLI of December 31, 2009. Tr. 140. He alleges disability due to herniated discs at C5-6, osteoarthritis, synovitis, gastroesophageal reflux disease ("GERD"), headaches, and asthma, beginning on January 15, 2008. Tr. 140, 171. Plaintiff graduated from high school, and his past relevant work consists of various office manager and sales positions. Tr. 30, 179-86. Plaintiff stopped working in 2004 because he was laid off. Tr. 38-39, 171. In October 2011, Plaintiff stated that although he had difficulty sitting, standing, walking, and performing postural maneuvers due to neck and hip pain, he remained capable of tending to such activities as personal grooming and hygiene, socializing with others, and traveling independently. Tr. 187-91, 191-92, 194. Plaintiff also denied any limitations related to cognitive functions such as memory, concentration, and comprehension of information. Tr. 191-92. Specifically, Plaintiff stated that he could pay attention for a couple hours; follow written and spoken instructions very well; and handle stress and changes in routine. Tr. 192-93.

#### 2. Relevant Medical Evidence

Plaintiff was involved in a motor vehicle accident on January 15, 2008. Tr. 211. Following

4

the accident, Plaintiff saw Andrew Carollo, M.D. ("Dr. Carollo"), for complaints of neck pain, headaches, right knee pain, and left buttock pain.  Tr. 211.  An initial examination showed that Plaintiff had bilateral tenderness and spasms to the nuchal and trapezius musculature; reduced cervical range of motion; and nine out of ten pain in his left buttock with contusions.  Tr. 211-12. A cervical MRI revealed a left central disc herniation at C5-6 with flattening of the left ventral portion of the cervical cord and foraminal narrowing on the left; uncovertebral hypertrophy at the C3-C4 and C4-C5 level; and a 1mm posterior subluxation of C5 upon C6 without evidence of canal stenosis.  Tr. 215.  Dr. Carollo referred Plaintiff for a course of physical therapy.  Tr. 213.

Plaintiff subsequently attended physical therapy sessions three times a week until August 28, 2008.  Tr. 216-50.  Over the course of treatment, Plaintiff's pain gradually decreased from a "10 out of 10" to a "5 out of 10."  Tr. 216, 238, 249.  During a final examination in August 2008, Dr. Carollo found Plaintiff to have a negative Spurling's test, normal muscle strength, normal reflexes, and only slightly decreased cervical range of motion.  Tr. 212.  He did not include any findings regarding Plaintiff's right knee or left hip.  Id.  In December 2008, Dr. Carollo sent a letter to Plaintiff's attorney chronicling his treatment and opining that Plaintiff had a cervical injury that was permanent and irreparable and would lead to degenerative changes in the future and increased pain.  Tr. 213.  Dr. Carollo also noted that Plaintiff's pain would fluctuate depending on activity levels and change in weather, and that Plaintiff should avoid strenuous activities with regard to the neck region.  Tr. 213.  The record does not contain any further treatment notes from Dr. Carollo.

On July 19, 2009, Plaintiff visited the emergency department at the University of Medicine and Dentistry of New Jersey ("UMDNJ") hospital for evaluation of abdominal pain.  Tr. 264.  He denied any musculoskeletal symptoms during this visit.  Id.  The doctors started Plaintiff on Prevacid and discharged him the same day in stable condition.  Tr. 275.  Thereafter, Plaintiff was

seen at the hospital outpatient medical clinic for a follow-up evaluation of his abdominal pain. Tr. 330. Plaintiff acknowledged that Prilosec, a similar drug used to treat GERD, improved his pain, and he denied any musculoskeletal issues or myalgia. Id. His examining physician advised Plaintiff to continue Prilosec for GERD. Tr. 331.

On October 15, 2009, Plaintiff saw Weizheng Wang, M.D. ("Dr. Wang"), a gastroenterologist, for complaints of occasional epigastric pain. Tr. 320. He reported a history of asthma, but stated that he had stopped taking pain medication. Id. He denied back pain, joint pain, joint swelling, muscle cramps, muscle weakness, stiffness, and arthritis. Id. Plaintiff's physical examination showed a non-tender abdomen, lungs clear to auscultation, normal gait and station, normal alignment and mobility of his head and neck, and no clubbing, cyanosis, petechiae, or nodes on his digits and nails. Tr. 321. Dr. Wang advised Plaintiff to continue the medication regimen prescribed for his GERD and referred him for an esophagogastroduodenoscopy ("EGD") and colonoscopy, which showed mild gastritis and a transverse colon polyp. Tr. 323. On his follow-up visit with Dr. Wang, Plaintiff denied any pain or discomfort. Id.

Plaintiff did not seek any further treatment prior to his DLI. In February 2010, two months after his DLI, Plaintiff sought emergency room treatment for folliculitis (inflammation of hair follicles), but again denied any musculoskeletal pain. Tr. 300-305. A physical examination indicated full range of motion throughout. Id. Plaintiff also sought emergency room treatment in June 2011 for sinusitis, and a physical examination showed normal neck range of motion. Tr. 312.

In January 2011, Plaintiff suffered a fall that injured his left hip, but he did not seek any treatment immediately following the accident. Tr. 333. On July 8, 2011, Plaintiff saw Fatima Samad, M.D. ("Dr. Samad") for his left hip pain. Id. Dr. Samad found Plaintiff to have mild hip tenderness posteriorly, but a normal range of motion. Tr. 334. Dr. Samad also referred Plaintiff

6

for an x-ray, which showed severe joint space narrowing and osteophytic lipping compatible with degenerative joint disease. Tr. 342. One month later, a left hip MRI revealed severe osteoarthritis and synovitis. Tr. 326. Upon orthopedic evaluation in September 2011, Plaintiff reported a five-year history of hip pain that had significantly worsened after his fall in January 2011. Tr. 326. On examination, Plaintiff had normal strength and range of motion through his upper extremities and right leg, but tenderness on deep palpation behind the femoral head and very poor internal/external rotation of his left hip. Tr. 328. Plaintiff was referred for an orthopedic consultation. Id.

On November 9, 2011, state agency physician Kopel Burk, M.D., performed an analysis of Plaintiff's disability application. Tr. 54, 349. Dr. Burk found that Plaintiff's left hip condition met the requirements of Listing 1.02A following his fall in January 2011, but there was insufficient evidence that Plaintiff had severe impairment prior to the DLI. Tr. 349. In particular, Dr. Burk noted that while Plaintiff had made allegations of cervical issues dating back to 2008, in his recent exams he had not mentioned the cervical problem. Id. Dr. Burk reached this conclusion by evaluating emergency room records, treatment notes from UMDNJ, physical therapy notes, Plaintiff's subjective complaints, and his daily activities. Id. On February 8, 2012, state agency physician Rizwan Mohammad, M.D., reviewed Plaintiff's medical records and affirmed Dr. Burk's opinion. Tr. 353.

### C. The ALJ's Decision

The ALJ utilized the five-step test for evaluating disability claims under the Act. 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity between the alleged onset date of January 15, 2008 and his DLI of December 31, 2009. Tr. 27. At step two, the ALJ concluded that Plaintiff had a severe impairment of degenerative disc disease of the cervical spine. Tr. 27-28. At step three, however, the ALJ found that through the DLI,

Plaintiff's impairments did not fall within any of the listed impairments set forth in the regulations. Tr. 28. At step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform "sedentary work" as defined in 20 C.F.R. § 404.1567(a), except that he must avoid concentrated exposure to extreme cold and extreme heat. Tr. 28-30. Next, the ALJ concluded that Plaintiff was capable of performing his past relevant work as an office manager, which was skilled and performed at a sedentary exertional level. Tr. 30-31. The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Act. Tr. 31.

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was not supported by substantial evidence because he: (1) failed to properly evaluate Plaintiff's own testimony; (2) failed to consider the opinions of medical experts; (3) ignored Plaintiff's diagnoses of asthma, headaches, GERD, and insomnia; and (4) failed to obtain the testimony of a vocational expert. The Court disagrees.

#### A. Consideration of Plaintiff's Subjective Testimony

First, Plaintiff argues that in calculating his RFC, the ALJ failed to properly credit his testimony regarding the limitations caused by his left central disc herniation at the C5-C6 level and osteoarthritis, as well as additional limitations created by chronic pain.[1] Specifically, Plaintiff contends that the ALJ ignored his testimony that he has trouble standing for more than an hour, cannot walk more than three blocks, and cannot lift more than ten pounds. Pl.'s Br. at 9. The Court disagrees.

Although an ALJ must give serious consideration to a claimant's complaints, such

---

[1] Plaintiff also argues that the ALJ failed to credit Plaintiff's testimony regarding asthma, headaches, and insomnia. Pl.'s Br. at 7. However, Plaintiff does not appear to have testified at any length regarding these issues at the hearing, and thus they will be addressed in a separate section. See infra Part III.C.

8

testimony is assessed "in relation to the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4); see also Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) ("Allegations of pain and other subjective symptoms must be supported by objective medical evidence."). If an ALJ chooses to reject certain evidence, such as the claimant's testimony, he or she must state in the decision "which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999). The ALJ specifically noted these requirements in his decision. See Tr. 29.

Here, the ALJ properly assessed Plaintiff's subjective claims of orthopedic limitations and pain, and considered them in light of the objective medical evidence. As an initial matter, the ALJ did in fact credit much of Plaintiff's testimony, concluding that "the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms." Tr. 29. The ALJ merely found that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 29. The ALJ based this conclusion on the "objective medical findings," which "reveal[ed] some limitations, but not to the extent alleged by the claimant." Id. Specifically, the ALJ found that Plaintiff's claims of severe limitations from January 15, 2008 to December 31, 2009[2] were contradicted by: (1) a reduction in claimant's reported pain level from a 10 out of 10 to a 5 out of 10 after a course of physical therapy from January through August 2008; (2) an August 2008 examination by Dr. Carollo that revealed only slight limitation in range of motion of the cervical spine and right rotation, while all other domains

---

[2] Because Plaintiff's alleged onset date is January 15, 2008 and his date last insured is December 31, 2009, he must demonstrate that he was disabled within the meaning of the Act between those dates. See Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990) ("Under 20 C.F.R. § 404.131, appellant is required to establish that he became disabled prior to the expiration of his insured status."); Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 197 (3d Cir. 2007) (holding that the district court did not err by failing to credit plaintiff's alleged obesity impairment because "the record shows that his obesity did not develop until well after his insured status expired").

9

were normal; (3) a final December 2008 examination by Dr. Carollo that noted that the claimant had full muscle strength, negative Spurling's test, and only slight limitation of range of motion; and (4) the fact that Plaintiff submitted no medical records indicating further treatment for musculoskeletal symptoms from December 2008 to his date last insured. Tr. 28-29. The ALJ also placed great weight on Dr. Carollo's opinion, which stated that Plaintiff's pain would vary depending on activity levels and changes in weather and that he should avoid strenuous activities, but stopped short of concluding that Plaintiff was permanently disabled. Tr. 30; see also Tr. 213. And finally, the ALJ placed great weight on the opinions of the state agency physicians, who found that Plaintiff's left hip condition met the requirements of Listing 1.02A following his fall in January 2011, but that Plaintiff had not established any disability prior to the DLI. Tr. 349, 353.[3]

Given the ALJ's consideration of Plaintiff's subjective complaints in light of the objective medical evidence, the Court cannot conclude that the ALJ erred in determining that Plaintiff can perform sedentary work. See Holley v. Comm'r of Soc. Sec., 590 F. App'x 167, 169 (3d Cir. 2014) (noting that the ALJ's credibility determinations are entitled to deference).

### B. Consideration of the Opinions of Medical Experts

Plaintiff also argues that the ALJ substituted his own opinion for that of the medical experts. The Court disagrees.

Plaintiff has pointed to four different medical opinions that are arguably probative of

---

[3] Although not explicitly discussed by the ALJ, there appears to be additional evidence contradicting Plaintiff's claim of total disability between January 15, 2008 and December 31, 2009. For example, on July 19, 2009, Plaintiff visited the emergency room at the University of Medicine and Dentistry of New Jersey ("UMDNJ") for an unrelated issue, and denied any musculoskeletal symptoms. Tr. 264. In addition, on October 15, 2009, Plaintiff stated at a gastroenterology visit with Dr. Wang that he "[d]enies back pain, joint pain, joint swelling, muscle cramps, muscle weakness, stiffness, [and] arthritis." Tr. 320. And finally, on an unrelated emergency room visit on February 24, 2010, Plaintiff reported no musculoskeletal pain and was found to have a steady gait and full range of motion. Tr. 300.

Plaintiff's disability during the relevant period: (1) Dr. Carollo's 2008 analyses and diagnoses; (2) a November 2011 review of the record by state agency physician Kopel Burk, M.D.; (3) a February 2012 review of the record by state agency physician Rizwan Mohammad, M.D.; and (4) a July 2011 examination and diagnosis by Fatima Samad, M.D. Each will be discussed in turn.

Plaintiff has not identified any aspect of the ALJ's decision that differs from Dr. Carollo's opinion. Plaintiff merely points to Dr. Carollo's finding that the damage to his C5-C6 discs is permanent and that he will continue to have this symptomatology complex for the remainder of his lifetime of variable degree, which Plaintiff believes proves that he could not perform sedentary work. Reply Br. at 1-2. However, "the ALJ's disability inquiry does not end upon the diagnosis of" a disease or impairment. Petition of Sullivan, 904 F.2d 826, 845 (3d Cir. 1990). Rather, "the ALJ must go on to evaluate whether the claimant's [impairment] was so severe that it prevented the claimant from engaging in substantial gainful employment." Id. (quotation omitted). The ALJ specifically laid out and discussed Dr. Carollo's findings, and accepted his assessment of Plaintiff's cervical injury. See Tr. 29-30. He then considered how Dr. Carollo's diagnoses impacted Plaintiff's exertional ability, and found his opinion to be "consistent with a determination that the claimant remained capable of working at the sedentary exertional level, as the doctor merely indicated the claimant should avoid strenuous activity." Tr. 30. This was the proper analysis, and does not warrant remand.

Plaintiff also fails to demonstrate that the ALJ substituted his own opinion for that of the state agency physicians, Dr. Burk and Dr. Mohammad. As both physicians concluded that Plaintiff did not have a disability under the Act prior to the DLI, it is difficult to understand why Plaintiff attempts to rely on their opinions. See Tr. 349, 353. In any event, the ALJ specifically discussed the physicians' findings, gave them "great weight," and concluded based on their opinions that the

claimant was "capable of significant work-related activities." Tr. 30. The ALJ's conclusions were fully consistent with those of Dr. Burk and Dr. Mohammad.

Finally, the ALJ properly addressed the medical evidence pertaining to Plaintiff's complaints of hip pain and osteoarthritis, including Dr. Samad's report. Although Plaintiff initially complained of hip and left buttocks pain after his automobile accident in 2008, see Tr. 211, Dr. Carollo's final examination in December 2008 did not mention any hip issues, see Tr. 212. Plaintiff also did not report any disabling effects due to a hip ailment during any of his other hospital visits or examinations prior to the DLI of December 31, 2009. The only other evidence addressing Plaintiff's hip impairment significantly postdates his DLI, and is dated after he sustained a traumatic fall in January 2011. See Tr. 333 (wherein Dr. Samad noted that Plaintiff "had a fall in Jan 2011, after which he developed this left hip pain which is progressively worsening"). Based on this lack of evidence, the ALJ agreed with the state agency physicians that there was no record evidence establishing that Plaintiff's hip impairment rendered him disabled under the Act prior to the DLI. Tr. 30. This conclusion was not contrary to Dr. Samad's evaluation, and was consistent with the ALJ's prior determination that the medical evidence demonstrated that "claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." Tr. 29. Accordingly, the ALJ did not substitute his own opinion for that of any medical expert in the record, and his conclusions were supported by substantial evidence.

### C. Consideration of Plaintiff's Asthma, Headaches, GERD, and Insomnia

Plaintiff argues that remand is required because the ALJ failed to consider Plaintiff's asthma, headaches, GERD, and insomnia. The Court disagrees.

Plaintiff's complaints of asthma, headaches, GERD, and insomnia were present in his

medical records, listed in his application for benefits, noted by a state agency physician, and mentioned by the SSA in its Notice of Disapproved Claim. See Tr. 57, 81, 171, 176, 271, 277, 281, 312-13, 349. Nevertheless, none of these impairments were mentioned by the ALJ.

The first issue is whether the ALJ erred by failing to consider Plaintiff's additional impairments at step two. Defendant argues that, if anything, the ALJ's failure to discuss Plaintiff's additional impairments at step two was harmless error because the ALJ nonetheless found that Plaintiff's cervical spine degenerative disc disease constituted a "severe" impairment, and thus allowed his claim to proceed past that step. Opp'n at 12 n.6. The Court agrees that any failure to mention Plaintiff's additional medical issues at step two was harmless error, if any. See, e.g., Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."); Wells v. Acting Comm'r of Soc. Sec., No. 15-6048, 2016 WL 6824369, at *4 (D.N.J. Nov. 18, 2016) (same).

The Court must also consider whether the ALJ's failure to consider Plaintiff's asthma, headaches, GERD, and insomnia in the RFC analysis mandates remand. As noted by the ALJ, when making an RFC determination, an ALJ must consider limitations imposed by all of the claimant's alleged impairments, even those that are not "severe." Tr. 26 (citing 20 C.F.R. § 404.1545(a)(2); SSR 96-8p). Here, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. 28. As the ALJ is not required to discuss every single piece of evidence in the record, see Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), and the ALJ considered and discussed a significant amount of medical evidence in his opinion, "there is no indication that, despite not expressly mentioning [Plaintiff's] other medical problems, the ALJ

did not take them into account." Bales v. Colvin, 576 F. App'x 792, 799 (10th Cir. 2014) (holding that despite the ALJ's failure to take numerous alleged impairments into account, remand was not warranted because the ALJ had recited the identical language as the ALJ used here, and appeared to have considered all of the medical evidence).

In addition, the ALJ is deemed to have considered Plaintiff's complaints of asthma, headaches, and GERD because the state agency physicians were aware of these impairments, see Tr. 349, 353, and the ALJ reviewed and adopted their conclusions, see Tr. 30. As the Third Circuit has held, when an ALJ evaluates and adopts the conclusions of physicians who are aware of the claimant's medical issues, such action "constitutes a satisfactory if indirect consideration of that condition." Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005); see also Sassone v. Comm'r of Soc. Sec., 165 F. App'x 954, 958 (3d Cir. 2006) ("[B]ecause Sassone's physicians were aware of his weight problem, . . . the ALJ's discussion and adoption of their medical conclusions constitutes, at a minimum, an 'indirect consideration' and rejection of Sassone's weight condition in his disability analysis.") (quotation omitted).

Moreover, even if the ALJ erred by failing to consider all of Plaintiff's alleged medical impairments, Plaintiff has not demonstrated that any of these issues, either individually or collectively, inhibited his functioning in a manner that would have changed the ALJ's RFC assessment. The plaintiff maintains the burden at steps one through four, and must present evidence establishing that each alleged ailment either individually or collectively limited his ability to perform work. Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 634 (3d Cir. 2010). Therefore, if a claimant fails to present evidence demonstrating "*how* [he] might have prevailed at step [four] if the ALJ's analysis had been more thorough," remand is inappropriate. Holloman v. Comm'r Soc. Sec., 639 F. App'x 810, 814 (3d Cir. 2016) (emphasis in original). Here, Plaintiff merely states

that he "has an inhaler [and takes other medications] for his asthma, wheezing and headaches," that his "pain interrupts his sleep," and that these impairments "further limit [his] ability to perform substantial gainful activity on a sustained basis." Pl.'s Br. at 3, 9. These are precisely the types of "generalized response[s]" that the Third Circuit has found insufficient to mandate remand. See Rutherford, 399 F.3d at 553 (holding that "an assertion that [claimant's] weight makes it more difficult for her to stand, walk and manipulate her hands and fingers" was not enough to demonstrate that the ALJ's consideration of the claimant's obesity would have "affect[ed] the five-step analysis"); Brown v. Colvin, No. 15-0992, 2016 WL 6652360, at *2 (M.D. Pa. Nov. 10, 2016) (same); see also Bales, 576 F. App'x at 799 (holding that any error was harmless because the claimant failed to show that any of her additional conditions actually affected her functioning).[4] Accordingly, any error by the ALJ was harmless, and remand is not warranted.

### D. Failure to Obtain Testimony of a Vocational Expert

Finally, Plaintiff alleges that the ALJ erred by failing to obtain the testimony of a vocational expert. The Court disagrees.

The ALJ determined at step four that Plaintiff was capable of performing past relevant work, and thus the sequential analysis ceased before advancing to step five. "At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ." Lopez v. Comm'r of Soc. Sec., 270 F. App'x 119, 123 (3d Cir. 2008); see also Breslin v. Comm'r of the Soc. Sec. Admin., No. 13-1190, 2014 WL 936441, at *14 (D.N.J. Mar. 10, 2014) ("When the ALJ finds that the claimant is able to perform past relevant work, none of these sources

---

[4] It also bears noting that the medical records indicate that Plaintiff's additional alleged impairments were not disabling. See, e.g., Tr. 249 (wherein Plaintiff stated in August 2008 that his headaches were only occurring "once a week"); 331 (wherein Plaintiff stated in August 2009 that his GERD symptoms "improved with Prilosec").

15

require an ALJ to consult a vocational expert at step four, regardless of the nature of the claimant's impairments."); Torres v. Comm'r of Soc. Sec., No. 10-4623, 2011 WL 6306593, at *6 (D.N.J. Dec. 14, 2011) (same).  As Plaintiff did not dispute that his past relevant work as an office manager was a sedentary job performed at the skilled level and the ALJ was able to identify an equivalent job in the Dictionary of Occupational Titles, see Tr. 30, it was within his discretion to decline to use a vocational expert at step four.  See 20 C.F.R. § 404.1560(b)(2).

## IV. CONCLUSION

Because the Court finds that the ALJ's decision is supported by substantial evidence, the Commissioner's disability determination is **AFFIRMED**.  An appropriate order will follow.

*/s Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**United States District Judge**